UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| GAF DEVELOPMENT, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-10-139 |
| | § | |
| BBVA COMPASS BANK, | § | |
| | § | |
| Defendant. | § | |

### ORDER

Pending before the Court is Defendant BBVA Compass Bank's Motion for Summary Judgment. (D.E. 26.) Plaintiff has failed to respond to the motion. As such, it is deemed unopposed. L.R. 7.4. Nonetheless, the Court has reviewed the motion, the summary judgment evidence on file, and the relevant authorities. For the reasons explained below, Defendant's Motion for Summary Judgment is hereby GRANTED.

**I.     Jurisdiction**

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are completely diverse and Plaintiff alleges damages totaling over $75,000.

**II.    Factual Background**

Plaintiff, GAF Development, Inc. ("GAF"), is a development company owned and established by Counter-Defendant George A. Felan in 2003 for the purpose of creating a residential development on three tracts of land in Robstown, Texas. In 2006, Felan attempted to obtain financing for GAF from Laredo National Bank ("Laredo"), whose successor in interest is Defendant BBVA Compass Bank ("Compass"). Felan estimated the development would cost approximately $2,000,000.00. (D.E. 26, Ex. B (Felan Depo. at 59.)

In the operative complaint and in his deposition, Felan contends he was led to believe that Laredo would provide GAF with full financing for the development project and that he was specifically told by Laredo's vice president, Robert Guerra, that a loan had been approved for approximately $2 million.[1]  Felan asserts that he signed loan commitment papers and other loan documentation, but that, despite "continuously push[ing] Mr. Guerra to provide the documentation," he "never received a copy."  (Amended Petition at 3.)  In his deposition, Mr. Felan admitted that he never signed any promissory note and that he had no written loan documents reflecting that any $2 million loan was ever made.  (D.E. 26, Ex. B (Felan Depo. at 59-61, 98.)[2]

Felan further contends that, under the belief that GAF would be would be receiving a loan for approximately $2 million, he continued to make plans and enter supply contracts for his real estate development.  Meanwhile, he continued to call and visit Mr. Guerra to try to obtain documentation for his pending loan, as well as the initial funding.  At one point, when Felan told Mr. Guerra that a quote for pipe necessary for sewage construction was about to expire unless he

---

[1] The precise amount of the alleged loan is unclear.  The Amended Petition states that Guerra telephoned Plaintiff and told him the loan had been approved in the amount of $1.6 million.  (Amended Petition at 3.)  In his deposition, Felan states that the loan was for "like, $2 million, but it could have been the 1.6.."  (D.E. 26, Ex. B at 147.)

[2] Felan stated, in relevant part, as follows:

> Q: Okay.  And so you got these quotes [for estimating the cost of the development] and then had taken them back to Laredo National Bank?
> A: Correct.
> Q: And based on that, you made an application for a $2 million loan?
> A:  No. He was supposed to give me copies back.
> Q: Okay.
> A: And he never did.  But at the time he told me it shouldn't take but maybe — that was a number he was always giving me, 45 to 60 days.  And then I didn't hear from him for about six months.  I called him.  He wouldn't return my calls.  So I started going in and talking to him, showing up…
> Q: As you sit here today, do you have a specific recollection of signing a promissory note for $2 million?
> A: No.
> Q: Okay.  But you don't have any written loan documents reflecting this $2 million loan?
> A: No.

(D.E. 26, Ex. B at 61, 98.)

purchased it, Mr. Guerra allegedly told Felan to "just get it" — leading Felan to order the pipe from the supplier. (Amended Petition at 4.)

However, when Felan called once again around November 2006 to ask about the status of his loan, he was told that Mr. Guerra was no longer with the bank and that the bank had no records of the alleged loan agreement with GAF. (Id.) According to Plaintiff, Laredo informed Felan that the bank would "get to the bottom of this." The bank agreed in the meantime to extend GAF a short-term "bridge loan" of $225,000.00 to pay outstanding invoices associated with the development. (Id. at 5.)

The so-called "bridge loan" was closed and funded on January 4, 2007. The loan is evidenced by a Promissory Note in favor of Compass Bank, as lender, in the principal amount of $225,000, set to mature on January 4, 2008. The Note is secured by three tracts of real estate in Nueces County, Texas and by a Guaranty executed by George A. Felan. (D.E. 26, Ex. 1, 2.) The first paragraph of the Promissory Note provides the following "Notice" in bold face type:

> THIS WRITTEN LOAN AGREEMENT AND ALSO OTHER DOCUMENTS RELATING TO THIS LOAN REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.
>
> THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

(D.E. 26, Ex. 1 at 1.) The Promissory Note is signed by George Felan and Cynthia Felan as "Directors" of GAF Development, Inc.

The Guaranty, also executed on or about January 4, 2007, contained a similar "Notice" in bold-face type directly above the signature, stating:

> THIS GUARANTY AND ALL OTHER DOCUMENTS RELATING TO THIS GUARANTY CONSTITUTE A WRITTEN LOAN AGREEMENT WHICH REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES RELATING TO THIS LOAN.

(D.E. 26, Ex. 2 at 5.) The Guaranty is signed by George Felan as "Guarantor (debtor/obligor.)"

The Promissory Note was eventually renewed on January 14, 2008, extending the maturity date of the loan until July 4, 2008 and modifying the principal amount to $224, 917.46. The renewal is evidenced by a contract entitled "Renewal, Extension and Modification of Real Estate Lien." The renewal contains yet another notice, directly above the signature line, stating: THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES. (D.E. 26, Ex. 3 at 3.) The renewal is signed by George Felan and Cynthia Felan as "Directors" of GAF Development, Inc.

On March 12, 2008, Compass and Laredo merged, with Compass emerging as the surviving entity, ostensibly entitled to succeed Laredo's rights under GAF's Note and Guaranty. (D.E. 26, Ex. A (Scott Affidavit) at ¶ 3.)

On August 27, 2008, the Note was renewed again, extending the maturity date to November 4, 2008. (D.E. 26, Ex. 5.)

According to Plaintiff, the bank eventually informed Felan that no further financing would be forthcoming and that the bank would not be able to offer him anything other than the short-term bridge loan that he already had obtained. (Amended Petition at 5.)

GAF subsequently failed to pay the Promissory Note balance on the maturity date or at any time subsequent to that date. On January 29, 2009, Compass sent a demand letter. On April 9, 2009, due to Felan's failure to pay amounts due by the maturity date, Compass posted the real property that served as collateral for the Note for foreclosure. A foreclosure sale occurred on May 5, 2009. As of February 15, 2011, the total amount that remains owing on the note, after credit for the foreclosure and other offsets, is $174,897.04. (D.E. 26, Ex. A (Scott Affidavit) at ¶ 14.)

Plaintiff brought suit on September 18, 2009. (D.E. 1, Exh. A-3.)[3] Plaintiff's First Amended Petition alleges the following causes of action: (1) Promissory Estoppel, (2) Common Law Fraud, (3) Fraud by Non-Disclosure, and (4) Negligent Misrepresentation. Plaintiff seeks, *inter alia*, the property he lost to foreclosure and the costs incurred in developing the failed real estate project in reliance on the development loan. (D.E. 1, Exh. A-3.)

Defendant Compass denies Plaintiff's allegations, contending that the bank's entire loan agreement is encompassed in the existing written loan contracts: namely, the January 4, 2007 Promissory Note for $225,000 and the renewals. Compass further alleges that GAF and Felan have failed to make payments under the Promissory Note and currently owe $174, 897.04. Compass brings a counter-claim against GAF and Felan to recover the amount owed on the Note along with attorney's fees in the amount of $88,090. (D.E. 6; D.E. 26 at 15.)

Defendant now seeks summary judgment on all of the parties' claims and counter-claims. (D.E. 26.) Plaintiff has failed to respond. As said, Defendant's motion is therefore deemed unopposed. L.R. 7.4.

## III. Discussion

### A. Summary Judgment

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law identifies

---

[3] Plaintiff's Original Petition named BBVA Bancomber, S.A. and Laredo National Bancshares, Inc. as the original defendants. (D.E. 1, Exh. A-3.) On April 30, 2010, Plaintiff filed its First Amended Petition adding Compass as a Defendant and dismissed the two other Defendants. Compass timely removed the case to this Court on May 18, 2010. See 28 U.S.C. §1446(b).

which facts are material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

On summary judgment, "[t]he moving party has the burden of proving there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law." Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 246 (5th Cir. 2003); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "the non-moving party must show that summary judgment is inappropriate by setting forth specific facts showing the existence of a genuine issue concerning every essential coM.P.onent of its case." Rivera, 349 F.3d at 247.

Pursuant to Fed. R. Civ. P. 56(c)(1), "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also

<u>Brown v. Houston</u>, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment").

Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the non-moving party, no reasonable jury could return a verdict for that party. <u>Rubinstein v. Adm'rs of the Tulane Educ. Fund</u>, 218 F.3d 392, 399 (5th Cir. 2000).

### B. Analysis

#### 1. Plaintiff's Claims

Defendant moves for summary judgment on each of Plaintiff's four claims: promissory estoppel, common law fraud, fraud by non-disclosure, and negligent misrepresentation. As said, Plaintiff has not responded to Defendant's motion. Regardless, having considered the evidence, the Court is of the opinion that all of Plaintiff's claims are precluded by the parole evidence rule.

Though each of Plaintiff's claims involves different elements,[4] all of Plaintiff's claims are based on the alleged misrepresentation by Mr. Guerra to Mr. Felan that Laredo Bank would provide approximately $2 million in financing for GAF's real estate development. Plaintiff complains of several specific instances in which Laredo's vice president allegedly led Felan to believe that his loan had been approved and that documentation would be forthcoming. (D.E. 26, Ex. B (Felan Affidavit).) Although Felan's allegations, if substantiated, might otherwise

---

[4] The elements of promissory estoppel are a promise, foreseeability by the promisor that the promisee would rely on the promise, and substantial reliance by the promisee to his detriment. See <u>English v. Fischer</u>, 660 S.W.2d 521, 524 (Tex. 1983).

The elements of a fraud are: (1) the defendant must make a false material misrepresentation; (2) the defendant must have known the representation was false, or the defendant must have made the misrepresentation "recklessly as a positive assertion without any knowledge of its truth"; (3) the defendant must have intended to induce the plaintiff to act upon the representation; and (4) the plaintiff must have actually and justifiably relied upon the representation and suffered injury. <u>Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.</u>, 51 S.W.3d 573, 577 (Tex. 2001).

The elements of negligent misrepresentation are: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. <u>Federal Land Bank Ass'n v. Sloane</u>, 825 S.W.2d 439, 442 (Tex. 1991)

support claims for promissory estoppel, fraud, and/or negligent misrepresentation, Felan's discussions with Mr. Guerra ultimately culminated in a final written agreement: namely, the Promissory Note for $225,000.

"It is well settled that the negotiations and discussions leading up to the writing cannot displace the terms of the written agreement." Boggan v. Data Systems Network Corp., 969 F.2d 149, 153 (5th Cir. 1992) (applying Texas law) (citing Turner v. Johnson & Johnson, 809 F.2d 90, 97 (1st Cir. 1986); see also Fisher Controls Intern., Inc. v. Gibbons, 911 S.W.2d 135, 142 (Tex. App. -- Houston [1st Dist.] 1995, writ denied) (discussed below). This is because, under the parol evidence rule, extrinsic evidence of alleged prior oral discussions is inadmissible to contradict or vary the meaning of the explicit language of a final written contract. National Union Fire Ins. Co. of Pittsburgh, PA v. CBI Industries, Inc., 907 S.W.2d 517, 521 (Tex. 1995).[5]

In addition, Texas law recognizes the power of contracting parties to create contractual provisions that disclaim reliance on prior representations or promises, i.e. "merger clauses." See LeTourneau Techs. Drilling Sys. v. Nomac Drilling, LLC, 676 F. Supp. 2d 534, 543 (S.D. Tex. 2009) (citing, e.g., U.S. Quest Ltd. v. Kimmons, 228 F.3d 399, 400 (5th Cir. 2000) (holding that a merger clause stating that the contract was "in lieu of any and all prior or contemporaneous agreements, conditions or understandings" precluded reliance on a prior oral promise); Cronus Offshore, Inc. v. Kerr-McGee Oil & Gas Corp., 369 F. Supp. 2d 848, 859 (E.D. Tex. 2004), affirmed, 133 Fed. Appx. 944, 2005 WL 1023386 (5th Cir. 2005) (unpublished) ("[W]here, as

---

[5] In Texas the parol evidence rule is codified in TEX. BUS. & COM. CODE § 2.202, which states:
Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression [**18] of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

(1) by course of performance, course of dealing, or usage of trade (Section 1.303); and

(2) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement. TEX. BUS. & COM. CODE § 2.202.

here, a disclaimer of reliance in the contract is negotiated by parties of equal bargaining strength in an arm's-length transaction, it is binding upon the parties and, as a matter of law, precludes claims of both fraudulent inducement and nondisclosure.""))

Therefore, courts applying Texas law frequently find that, when a written agreement contains a merger clause and clearly represents the final terms agreed to by the parties, a party who has read and understood the terms of the agreement cannot thereafter allege that he was defrauded simply because certain terms that were discussed beforehand are not included. See Boggan, 969 F.2d at 153-154; Fisher, 911 S.W.2d at 142; U.S. Quest Ltd., 228 F.3d at 400; Cronus Offshore, Inc., 369 F. Supp. 2d at 859.

For example, in Fisher, the plaintiff was a sales engineer who was approached by a sales representative of the defendant about purchasing another company. 911 S.W.2d at 140. The plaintiff wanted the sales agreement he negotiated with defendant to have a five-year term. However, defendant's representatives proposed a three-year term. The plaintiff testified that when he expressed his misgivings about the proposed three-year term, defendant's representatives told him not to worry, making statements like, "It's a mere formality. Trust me." And: "just go with us and we'll talk about it later." Id.

The final agreement stated that the agreement would be "effective for a period of 3 years from the date set forth" unless renewed. Id. at 141. In addition, the agreement stated: "[t]his agreement constitutes the full understanding of the parties, a complete allocation of risks between them and a complete and exclusive statement of the terms and conditions of their agreement." Id. The plaintiff testified that he had read and understood the contract, including the three-year term provision. Id. Therefore, the court held, "evidence of the misrepresentation

[regarding the five-year term allegedly made prior to execution of the final agreement] would be barred by the parol evidence rule." Id. The court stated:

> When experienced executives represented by counsel voluntarily sign a contract whose terms they know, they should not be allowed to claim fraud in any earlier oral statement inconsistent with a specific contract provision.

Id. at 142 (citing Boggan, 969 F.2d at 153-54)).

In this case, the discussions between Felan and Mr. Guerra — wherein Guerra allegedly told Felan that he would be able to obtain financing for a $2 million loan — culminated in a loan agreement for the amount of $225,000, executed on January 4, 2007 and evidenced by a Promissory Note. The Note was signed by Felan and obligated him to pay back the principal by January 4, 2008 and to make interest payments each month until maturity. (D.E. 26, Ex. 1.) As explained above, the Note and the accompanying Guaranty contained notices making clear that these writings represented the final expression of the parties' loan agreement. The merger clause in the Promissory Note stated:

> THIS WRITTEN LOAN AGREEMENT AND ALSO OTHER DOCUMENTS RELATING TO THIS LOAN REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.
>
> THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

(D.E. 26, Ex. 1 at 1.) The loan renewals, which ultimately extended the maturity date to November 4, 2008, likewise contained this notice. (D.E. 26, Ex. 3, Ex. 5.)

"[A]bsent fraud, one is presumed to know the contents of a document and has an obligation to protect [him or her self] by reading documents prior to signing." Boggan, 969 F.3d at 153 (quoting Nautical Landings Marina, Inc. v. First Nat'l Bank, 791 S.W.2d 293, 298 (Tex.App.--Corpus Christi 1990, writ denied) (citing G-W-L, Inc. v. Robichaux, 643 S.W.2d 392, 393 (Tex. 1982)). Here, Felan testified that he read and understood the terms of the

agreement and that he was aware that the loan was made in the amount of $225,000. He acknowledged that he had seen the statement that there were no unwritten oral agreements between the parties relating to the loan. (D.E. 26, Ex. B at 119-120.)

As in Fisher, Felan knew and understood both the terms of the loan and that the loan agreement was for $225,000, not $2 million. As in Fisher, the Promissory Note contained a merger clause clearly indicating that the agreement constituted the full understanding of the parties and that that no outside agreements or terms could be used to supplement or vary the terms of the Promissory Note. Therefore, as in Fisher, the parol evidence rule precludes Plaintiff from relying on misrepresentations allegedly made to Felan regarding the loan before he signed the contract. 911 S.W.2d at 141-142; see also Boggan, 969 F.2d at 153.

Texas law recognizes an exception to the parol evidence rule when parties challenge contracts as "fraudulently induced." See Dunbar Med. Sys. v. Gammex Inc., 216 F.3d 441, 452 (5th Cir. 2000) ("A fraud claim can be based on a promise made with no intention of performing, irrespective of whether the promise is later subsumed within a contract.") (quoting Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, 960 S.W.2d 41, 46 (Tex. 1998)). In such cases, parties "may rely on evidence of oral promises or agreements to support their claims," despite the existence of a final written agreement or a merger clause. Id. (citing Santos v. Mid-Continent Refrigerator Co., 471 S.W.2d 568, 569 (Tex. 1971) (per curiam) ("The parol evidence rule will not prevent proof of fraud or mutual mistake."); Dallas Farm Mach. Co. v. Reaves, 158 Tex. 1, 307 S.W.2d 233, 239 (Tex. 1957) (holding that a merger clause does not bar the use of parol evidence to establish that the contract was induced by fraud)); see also Boggan, 969 F.2d at 153 (citing Texas cases finding fraud when a party induces another party who is

"excusably ignorant" of the nature of the contractual obligations into a written contract that does not reflect the parties' true agreement).

In this case, however, Felan does allege that he was "fraudulently induced" into signing the Promissory Note for $225,000 on January 4, 2007. Rather, Felan admits that he was willing and eager to obtain the $225,000 "bridge loan," which he believed would lead to further financing. (D.E. 26, Ex. B at 69) Moreover, there is no evidence in the record before this Court on summary judgment that Mr. Guerra, through his oral conduct, "fraudulently induced" Felan to enter into a loan contract that Felan would not otherwise have agreed to.

As the Fifth Circuit recognized in similar circumstances, involving a guarantor on a promissory note attempting to avoid liability by claiming that the bank falsely represented to him that the bank would not attempt to enforce the guaranty:

> The law is well settled that in order for [the guarantor] to prove fraud in the inducement sufficiently to allow an exception to the parol evidence rule to come into play, he must show some type of trickery, artifice or device employed by [the bank] *in addition* to showing that [the bank] represented to him that he would not be liable on the guaranty.

Rosas v. U.S. Small Business Admin., 964 F.2d 351, 356 (5th Cir. 1992) (emphasis in original) (quoting Texas appellate court's opinion in Simpson v. MBank Dallas, N.A., 724 S.W.2d 102 (Tex.App.-Dallas 1987)); see also Perez v. Alcoa Fujikura, Ltd., 969 F.Supp. 991, 1006 (W.D.Tex. 1997) ("In order to invoke [the fraud in the inducement] exception [to the parol evidence rule] the plaintiffs must show 'trickery, artifice, or device' by the defendants in addition to showing the defendants made false representations.") (quoting Rosas, 964 F.2d at 356.)

Here, Felan's own deposition testimony indicates that Mr. Guerra never actually told Felan that his loan had been fully funded in any of their discussions. At best, Mr. Guerra's statements were expressions of the bank's *intent* to fund Felan's loan, not misrepresentations of fact made in order to "dupe" Felan to enter into the short-term bridge loan contract. See Boggan,

969 F.2d at 153; see also Dunbar, 216 F.3d at 453, n. 15. For example, Mr. Felan described a conversation over lunch in which Mr. Felan asked Mr. Guerra, "Robert, when is it going to finance?" Mr. Guerra allegedly responded, "George, just be patient. It's going to fund." (D.E. 26, Ex. B (Felan depo.) at 69.) When asked how Mr. Guerra gave Felan the impression that Laredo would fund a $2 million dollar loan, Mr. Felan responded, "He would always tell me, 'George, don't worry about it. We just got to take care of some internal issues…Laredo Bank is being funded. We should be able to fund this [Felan's loan] within 45 to 60 days,' roughly like that." (Id. at 147.) These statements do not indicate that Mr. Guerra employed "some type of trickery, artifice or device" to induce Felan to sign the Promissory Note. See Rosas, 964 F.2d at 356.

Regardless of any prior discussions Felan had with Mr. Guerra regarding the ultimate amount of the loan, Felan entered the January 4, 2007 loan agreement with full knowledge that it would be limited to its terms — namely, that it was a loan for only $225,000. He was explicitly informed by all of the loan documents that there were "no unwritten oral agreements between the parties." (D.E. 26, Ex. 1 at 1.) To allow Felan to introduce evidence of a prior oral agreement binding Laredo to a larger amount would "turn contract law on its head and vitiate the parol evidence rule." Boggan, 969 F.2d at 153; see also Perez, 969 F.Supp. at 1006 ("Plaintiff's allegations of simple fraud cannot overcome the parol evidence rule.") "To quote the Fifth Circuit:

> If fraud could be predicated on a party's allegation of any oral promise to vary the express terms of the [contract], then any collateral parol agreement might be asserted to contradict, vary or even abrogate any written contract. The result would destroy the parol evidence rule altogether resulting in uncertainty and confusion in the law of contracts...."

Perez, 969 F.Supp. at 1006 (quoting Rosas v. U.S. Small Business Admin., 964 F.2d at 356.) Because Felan voluntarily signed the January 4, 2007 loan contract with full knowledge that it

was the final expression of the parties' agreement, Plaintiff cannot base his claims for promissory estoppel, fraud or negligent misrepresentation on statements inconsistent with the provisions of his agreement. See Fisher, 911 S.W.2d at 142. "Otherwise, contracts would be 'nothing more than a scrap of paper.'" Id. (quoting Howeth v. Davenport, 311 S.W.2d 480, 482 (Tex. Civ. App.--San Antonio 1958, writ ref'd n.r.e.)).

Accordingly, Defendant's motion for summary judgment on all of Plaintiff's claims is granted.

### 2. Defendant's Counter-Claim for Breach of Contract

Defendant brings a counter-claim against GAF and Felan for breach of contract, alleging that GAF and Felan owe Defendant a total of $174, 897.04: the amount that remains owing on the Promissory Note and Guaranty following the foreclosure sale. Defendant also seeks attorney's fees incurred in collecting this amount, totaling $88,090 as of summary judgment.

Under Texas law, the elements for a breach of contract cause of action are: (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach. See Hussong v. Schwan's Sales Enterprises, 896 S.W.2d 320, 326 (Tex. App.--Houston 1995).

Having reviewed the terms of the Promissory Note, the Guaranty and the loan renewals laid out above, (D.E. 26, Ex. 1, 2, 3, 4, 5), and accepting as true Defendant's unopposed assertions that GAF and Felan have failed to pay the full amount owed, the Court holds that Defendant is entitled to summary judgment on its counter-claim for breach of contract.

### IV. Conclusion

For the reasons explained above, Defendant BBVA Compass Bank's Motion for Summary Judgment (D.E. 26) is hereby GRANTED.

SIGNED and ORDERED this 22nd day of March, 2011.

_____
Janis Graham Jack
United States District Judge